May it please the court. Good morning. My name is Thomas Pamela on behalf of Petitioner in this matter. As your honors mentioned, there are two docket numbers in this case. The first one I'll be addressing is the docket number 12-72982. This is a review of a negative reasonable fear finding by an asylum officer that was later affirmed by an immigration judge in Salt Lake City, Utah. There's two main issues with this docket. The first one is whether the proper circuit to review this case is the Ninth Circuit or the Tenth Circuit. The next issue is, if we get there, is whether the immigration judge erred in affirming the asylum officer's decision under the substantial evidence standard of review. Now, 8 U.S.C. 1252b2 states that a petition for review should be filed where the immigration judge completed the proceedings. 8 U.S.C. 1252b9 states judicial review is available only for final orders of removal. I think if you boil it down, the issue comes down to when or where was the final order in this case. Are you seeking a transfer? No, we wanted to stay at the Ninth Circuit, yes. Let me ask you about the merits of your case. Sure. And the reasonable fear determination. There was no past persecution in Mexico, was there? It all took place in the United States? Correct, Your Honor. And the threat of future persecution, your client hasn't spoken to the abuser in open contact in the last 13 years? Yes, I believe it's been since their separation in the late 90s. So where do you get your reasonable fear of persecution if your client's sent to Mexico? It's based solely on the possibility of future persecution based on the acts that occurred in the United States. We understand that we can't use those acts in the U.S. to establish past persecution, but they can still be used to establish a The burden in reasonable fear proceedings is just a reasonable possibility for a 10% chance. There was testimony taken during the asylum interview where the petitioner described the brutal abuse that she suffered from her husband at the time while they were here in the United States. And what kind of evidence is there that the Mexican government wouldn't protect your client against, aside from any other problem, that the Mexican government wouldn't protect your client against any fear that she might have of any persecution she might suffer from? Was it her husband, is it? Well, ex-husband. Well, there was a country condition report submitted during the ineptitude of the Mexican government to protect women from domestic violence. I think one of the government's arguments in this matter was that Mexico does criminalize rape and domestic violence, but the issue here isn't whether it's criminalized on paper, it's whether it's enforced. And the country conditions make very clear that it's not at all. She hasn't been contacted by her abuser in the past 13 years. Why is there any fear of persecution? Because of his actions prior to him leaving the United States. The issue here isn't... Do we actually know that he's left the United States? We are almost certain. The petitioner testified during her asylum interview that he did leave. How does she know? Excuse me? How does she know? I mean, we know that he was, if I got the right of the various cases in mind, he lost his green card in 2002. Yes. So he may still be here. She spoke about, if you look at the actual interview, 135 in this case. He could have gone back and returned. I mean, this is... Right. He could have been deported and just come back again, and we don't even know where he is. It's, it's presumable he's in Mexico though. If he lost his green card and he hasn't attempted to contact her here in the United States, based on his prior actions, if he was here in the United States, he would have contacted her. She did receive phone calls after the separation, after she escaped to her sister's home in Nevada. I believe he spoke with her brother and made threats to her. The evidence shows that he most likely is in Mexico. The issue here is whether she has returned to Mexico, whether there is a reasonable possibility she'll be persecuted there by him. And again, it's, it comes down to the standard of review here. Andrade Garcia established that an immigration judge in reasonable fear proceedings needs to show substantial evidence that, of why he's affirming the negative reasonable fear finding. Here, he makes several mistakes in his findings. For example, he states that she was able to leave her husband here in the United States, and therefore we can't, we can't decide that she is a member of the particular social group of women unable to escape the domestic relationship. But he makes a mistake here in that the issue isn't whether she's able to leave the domestic relationship in the United States, whether she's able to do so in Mexico. Obviously, she's able to do it here. That's why we're seeking protection in the United States, because there's more resources to protect victims of domestic violence. The issue is, if she goes back to Mexico, whether she would be able to escape that domestic relationship. And we've always submitted that she would not be able to do that. So he made a mistake in saying because she left the relationship here and went to Nevada, then she's not a member. But that, again, it's irrelevant. It's whether it's... Maybe we ought to get on to the motion to reopen. As I understand that motion, it was three years that it took her to file the motion to reopen rather than the one. And the only exception is for extraordinary circumstances. What were the extraordinary circumstances? It was the way the abuse and the threats affected her and affected her mental well-being. Where in the transcript does she say how that she was unable to file within one year because of anything that happened to her? Again, it's not in the transcript because these are just reasonable fear proceedings. We have the... Well, it's a transcript of a reasonable fear proceeding. Right. And there she does talk about how she's still afraid of the husband. Yes, but did she connect that with her inability to file within one year and that it took her an year? Where is the evidence or her testimony? Well, she obviously didn't discuss it during a reasonable fear interview because they weren't discussing a motion to reopen at that time. She's not familiar, obviously, with the legal terminology either of a motion to reopen. She was not represented by counsel during the interview. These statements and assertions are made in the actual motion to reopen. If the proceedings get reopened, we would submit evidence of that or if it gets remanded to consider the motion again. Okay. Well, where does it say in the motion to reopen? I'm not sure. What does it say in the motion to reopen and what evidence that they will introduce? Again, they cite to the reasonable fear interview that she's still afraid of the husband and that the prior abuse still... And that's the only explanation. That's the extraordinary circumstance is that she's afraid of her husband and that's why she couldn't file within one year and only could file after three years. Right. And again, we would argue that a remand is warranted to flesh that out. But that doesn't seem to me. I don't see any direct connection between that and the delay. But the statute under battered spouses and children for motions to reopen do in a section state that the deadline or the time deadline to file a motion to reopen should be extended for battered spouses because they are a battered spouse. Again, they give one year. It's longer than the 90 days, but it shows that there are reasons to extend this time limit because of the abuse that domestic violence victim has suffered. But they say that she has to show extraordinary circumstances. Now, there's an issue with the IJ's opinion where he says he's provided no proof that she was ever married to her abuser or she did not provide any proof of legal status. Yet, another federal agency said he did have lawful permanent resident status. And I guess another IJ said that she was married to him. How do we reconcile that? Well, she didn't have, unfortunately, at the very beginning, a lot of still doesn't really information about the specific status or even the marital status of them. It did turn out that he was a resident. And because the abuse occurred before he lost his green card in 2002, I think we filed a motion to supplement the record here showing that that that agency, the National Vermont Service Center, found that he was a resident. So that's been established now. But I think there are two separate issues. One is the statute of limitations issue. And then assuming it was timely, whether she gets whether there was a prima facie eligibility for discretionary relief. I mean, it's still unclear to me correct that whether she whether this guy was deported or not, what what the what the what the connection is between the delay and the abuse. I understand that, Your Honor. And again, we've always asserted that the abuse that she suffered did contribute to the delay in her filing the motion to reopen regarding the issues of whether she was married or whether he was a resident. Again, it's been established now that he was a resident, especially during the time of the abuse. Under the VAWA statute, it does state that if you have a bona fide belief you're married to the abuser, that could still qualify for for relief here, even if for some reason the marriage was never legally executed. So here, the fact that she did believe that she was married at the beginning, and she did testify credibly to it, would presumably qualify her for this relief. Those are the two big things that at this point have been established for the most part. Again, I think the bigger issue is the timeliness of this. Again, there's not a whole lot of evidence here because the proceedings were never reopened. She was given a stipulated... But the motion to reopen can itself contain the evidence that you want to introduce. I'm sorry? I said the motion to reopen can contain the evidence that you want to introduce, or can be supported by affidavits, can somehow describe what it is that you would say if there were to be reopened. Yeah, and I believe an application was included with the motion asserting that as her statements, which would count as evidence supporting that she was... When I asked you that before, you said it would be in the reasonable fear transcript. Well, she talked about it there, too, but not directly related to a motion to reopen, though. Okay, well, you've got about two minutes left. Thank you, Your Honor. I'll reserve this. Thank you. Good morning again. May it please the Court, Timothy Hayes on behalf of the Attorney General. Counsel, do you want to take those issues in that same order as your opponent, the reasonable fear and then the motion to reopen? Okay, that's fine. And the reasonable fear, are you pressing a transfer to Las Vegas? Well, the Tenth Circuit, which I believe... I'm not even sure where they... They sit in Denver, Your Honor. Oh, okay. Well, either one. You've got to give you a choice. You want to go to... Aren't you happy here? Well, Congress mandated the statute. It's not mandatory. Well, it is. I mean, it's not jurisdictional, Your Honor, but it is mandatory. And we've pressed since the beginning that this case should be transferred repeatedly in a motion in our opening brief. And why clutter this Court's dock? It was something that should be before the Tenth Circuit. Because you have cluttered it, so... Yeah, because it's here. Why send it over to them for a redo, you know? But the other interesting issue which this Court has, we disagree with, but it's resolved already in Andrade, is the standard to review the reasonable fear proceedings. And the Tenth Circuit hasn't had a vehicle to do that with. In this case, it would provide a vehicle. We don't want to give them a vehicle. All right. I really don't want to spend unnecessary judicial time on this case. We've got everything here. So let's just... I don't really, I must say, see why it's mandatory. It says that you can transfer in the interest of justice. Well, Your Honor, 8 U.S.C. 1252b2 says, a petition for review shall be filed with the Court of Appeals for the judicial circuit in which the immigration judge completed the proceedings. The immigration judge completed the reasonable fear proceedings in Salt Lake City. That's why it's mandatory. Now, it's probably not jurisdictional. That's correct, but it's mandatory. And the Supreme Court has been clear, as long as we don't waive it and we press it from the beginning, it ought to be... If we resolve the reasonable fear and motion to reopen issues in your favor, you're not going to accept them? You're going to say, well, we shouldn't have done it. You're going to want it sent to Colorado? We would be grateful, Your Honor. But procedurally, it would be proper for the Tenth Circuit to have addressed the reasonable fear proceedings. Because the immigration judge did apply Tenth Circuit case law, too. So it puts the court in a little bit of an odd situation reviewing a case where it's a different circuit's case law. Okay. But now, while you're here, tell us about the reasonable fear. Okay. We disagree with Andrade, but I'm not going to waste this Court's time because a panel cannot overrule. So we'll just assume substantial evidence. As the panel has indicated, there's no indication of past persecution here because most of the abuse occurred in Mexico. There were some hints that something might have occurred in the... Excuse me. Most of the abuse occurred in the United States. There was some hint that there were some issues in Mexico, but during a reasonable fear hearing, she never testified anything going on in Mexico. So we have no evidence of that. Turning to the future persecution analysis, both have remarried since the abuse occurred. Now, I know that... I don't want to bleed into the second petition too much, but there is extra record evidence that was attached suggesting that the abuser had Waffle Permanent Resident status, and he lost it in 2002. Now, the Court obviously shouldn't consider it for the same reason that we discussed in the first case, this extra record evidence. But even if we were to consider it, it doesn't establish that he had Waffle Permanent Resident status at the time they were married. He remarried three months after they separated. We don't know how he obtained that status. He could have gotten it from that second marriage. He might not have been a Waffle Permanent Resident at the time he was married to Ms. Mendoza. But anyhow... But she testified, and her testimony was found credible. She testified that she was married. She didn't testify that she was married to a Waffle Permanent Resident United States citizen. She testified that she entered this country illegally, not legally through a marriage, and she had no idea of her ex-husband's, excuse me, status. So we don't know. And I understand that, you know, it is kind of strange that you would petition a separate government agency and that would kind of come out in a decision. But Congress has placed the burden on her to prove the marriage, and she hasn't done it. But I apologize. I didn't want to bleed over. It just came up in my notes. Going back to the reasonable fear interview, I've discussed that both have remarried and that she's had no contact with the abuser since 1998. So there isn't an objectively reasonable possibility that he would single her out should she return to Mexico. We just have no indication of that. She spent three months in Baja, California, in Mexico after she was ordered to move, I believe it was in 08, living with her sister. And she did return illegally since then, but it wasn't because of her husband. She put in a reasonable fear in the notes that there was a nightclub fire. Her, I believe, brother-in-law had a robbery at his business and was murdered. It was general crime-related things. It wasn't anything tied to her ex-husband specifically. The only evidence of anything tied to her ex-husband specifically was in the hometown she grew up in, that's where she met her ex-husband, her brother still resides. And arguably, her brother came into contact with her ex-husband. Her ex-husband said that he better never see her again, otherwise he would hurt her. But that was the only sort of evidence of any sort of threat or anything we've had. And there's been no direct contact for 12 years. So, based on those indications, the immigration judge affirmed the negative reasonable fear determination and the court should affirm it too. And unless the panel has questions, I will- Motion to reopen. Okay. Okay. Mrs. Mendoza was originally ordered removed in May of 2008. She filed her motion on September, 2011, so it was three years too late. There was a lot of discussion about whether her abuse could be an extraordinary circumstance to excuse the one-year filing deadline. And as Judge Reinhart was alluding to, there's no evidence of that. And she could have provided the evidence with her motion to reopen. An affidavit, a declaration, something. That's the purpose of a motion to reopen, to allow the adjudicator to determine whether a full hearing is warranted. She didn't do that, so the motion is untimely. Now, the agency did sort of go beyond that and it said, you know, we deny this on timeliness grounds, but we're also going to deny it because she hasn't shown a prima facie eligibility for the relief sought. And they gave two grounds for that. One is that she hasn't proven that her ex-husband was a United States citizen or lawful permanent resident. And I won't waste time on that since- Well, I, but we do have a letter now that, I mean, it's that there's a motion attached to, and it's from the USIS. And it seems to me that maybe we should remand on this one and let the, this is from the immigration judge, right? Let the immigration judge consider that in the first place because her testimony was found credible. And she testified that she was married to him and she didn't know the status, but this is significant evidence that he was a lawful permanent resident at some point. Well, the vehicle wouldn't be for this court to remand on this record because this record was correct. The vehicle would be for her to file another motion attaching that and saying, here's new evidence. The other thing is they denied- Well, I know you're arguing that it's correct, but I question the rationale behind the, or stated rationale for the decision that there weren't extraordinary circumstances here. I mean, the IJ kind of just brushed it off saying, well, everybody who's abused has, is, you know, injured and has trauma. And therefore, without really specifically considering what kind of trauma or lasting effects this may have had, including the fact that her son, that people told her who were in Mexico with this ex-husband that he had threatened to kill her son as late as 2008. Well, Your Honor, before I directly address your question, I just want to mention that the timeliness grounds is still independently dispositive. So even if you think this is new evidence, it still doesn't excuse- The question to me is whether the IJ made an adequate finding on the timeliness grounds. I think he absolutely did. Again, there's no evidence. The only evidence we have is a couple of statements that she made. There's no declaration. There's no affidavit. You have her credible testimony before the reasonable- I don't believe that was in the reasonable fear testimony. I don't think that that- She was married to him? Right, but the abuse wasn't described. She didn't link the abuse to the delay and filing. I agree with Your Honor that this kind of abuse shouldn't be brushed off. But I don't think that's what the immigration judge did here. I think the immigration judge said that she didn't link what she claimed were lingering effects of the abuse to the reason why she didn't file in time. I mean, she left him in 98. She should have filed her motion in 2009. She didn't file at all during that period. She went into 2011. She doesn't explain why. Plus, she's been happily remarried since and has the support of her current husband. So it's absolutely- Nick, let's ask you a practical question. I know you're concerned about the use of judicial time. Yes, Your Honor. We're concerned about the use of executive time. Isn't this a case- This woman clearly was a victim of domestic abuse. She's the mother of two U.S. citizens. Yes. And she's been in the United States for 25 years. We'll give her a take. Yeah. But she's been here a while. Yes, Your Honor. You know, we have a wonderful mediation service. Isn't this a case that you might be willing to talk about prosecutorial discretion? Well, I believe the case has already been vetted, Your Honor. The reason why there's some resistance is she made a false claim to United States citizenship. There is a discussion of her obtaining a passport under the name of Juana Fisher and using it to gain employment. And the government takes that very seriously. Is she supposed to stay unemployed when she's here? Excuse me, Your Honor. I'm sorry. You're supposed to stay unemployed when you're living here for 25 years? No, you're not supposed to get a passport as an American citizen and claim American citizenship. Absolutely not. It's not the fact that she was employed that is precluding. It's the fact that she claimed citizenship. So, you know, going back to that Morton letter, I don't even know if it's still in effect or whatever. It's been superseded. My understanding is that the government is really has put as a priority deporting people who have committed crimes and have been convicted of crimes in the United States. Serious crimes. Yes. Generally, yes, Your Honor. Was she, I mean, was she charged with it? I didn't even see that. Well, she does have a few arrests for theft. And we didn't really push it on the court because she explained in a reasonable fear hearing that her ex-husband was making her do certain things and she did it at his direction. So we didn't. But there are some arrests. She was prosecuted? Well, I don't think she was actually convicted. She was arrested. And I think the charges are dropped, but the record doesn't really go into great detail. So I don't know for sure. She's not, because of the arrest, she's not disqualified from. It would be the United States citizenship false claim to, which is a serious, serious issue. Was she convicted of that? Well, she had an expedited removal order where she conceded that she did it. And you could be charged with it criminally, but she was not, no, no, Your Honor. So, you know, with two American citizens living here 25 years and not doing the kind of, I know you take it seriously, but to say you're a citizen because you want to work and support your family doesn't seem to me to be the most egregious moral offense. So, you know, with all the problems we have with trying to deport all these people, it seems this is one you might be willing to talk about taking another look at. Okay. I mean, we still maintain that the both, to the extent the court keeps the first petition, they should be denied. And this one should be denied too, but I can take it to DHS. Yeah. Well, we can send you a letter about mediation or something. And, you know, otherwise, we're going to spend a lot more time on this. Maybe we could send you to Colorado. You can have a nice trip there. I would love to see Denver, Your Honor, because I'm not lying. I've never been. And this can bounce around the courts for another couple of years and keep everybody busy. I mean, there is some advantage to distracting all of you from deporting everyone you can lay your hands on. I wouldn't go that far, Your Honor, but I understand where you're coming from. I mean, we might be able to free you up to go after the real criminals. So we'll get in touch with you about the possibility of working this out. Okay, Your Honor. But we do appreciate the straightforwardness of your arguments. And the amicus brief, too, that was written here. I don't know who did that. Let's see. I think that was in the fourth case, Your Honor. Or no, it was this case. That's right. They were arguing the reasonable fear standard. That's correct. Yeah. Yeah. Okay. Unless there are further... Thank you very much. Thank you. So could I just understand your position on mediation? Do you object to us simply referring it? We... Our referral is fine, Your Honor. I mean, I think on the merits that we should prevail on both petitions. But I'm willing to go to the defense. We would withhold any decision pending. Okay. Okay, thank you very much. Thank you, Your Honors. For the record, we would also be interested in placing this case in mediation. It's not something that we've done before. But I'll note the various positive equities in this case. Just very quickly, I just want to go back. I think apart from the mediation, whether there's alternative forms of relief in this matter, I do feel strongly that this case should be remanded for petitioner to file an I-589 application with the immigration court. What's that? I'm sorry? What application? I-589 for withholding of removal and protection under CAT. Again, I think the immigration judge erred in several respects in his decision affirming the asylum officer's negative reasonable fear finding. There were three main reasons. Number one, again, he stated that she was able to leave the relationship here in the U.S. Number two, he said there was no inclination of harm. There are in the record various affidavits or letters from people who witnessed the relationship who claim on the record that she is still in danger from her ex-husband if she has returned to Mexico. So there is evidence there showing there is an inclination of harm. He didn't, at least he didn't mention those in the decision he made. And then again, the third main reason he made was there was no government acquiescence. That is contradicted by the country condition reports and the very specific information there regarding the plight of domestic violence victims and particularly in Mexico. Okay, you're just about up. Three seconds. Yep, and with that, I thank you all. Thank you. Case history will be submitted.
judges: Reinhardt, Wardlaw, Korman